UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE MARTEZ STALLWORTH,

                Petitioner,

v.                                              Case Number 09-14114
                                              Honorable David M. Lawson

NICK LUDWICK,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

       The petitioner, Andre Martez Stallworth, presently confined at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Following a jury trial in the Oakland County, Michigan circuit court, the petitioner was convicted of three counts of armed robbery, one count of felon in possession of a firearm, one count of felonious assault, and five counts of possession of a firearm during the commission of a felony (felony firearm).  The petitioner was sentenced as a second-felony habitual offender to concurrent prison sentences of twenty-nine to sixty years for each of the armed robbery convictions, three to seven-and-one-half years for the felon in possession conviction, and two to six years for the felonious assault conviction, all of which were to be served consecutively to five concurrent two-year prison terms for the felony firearm convictions.  The petitioner alleges that he was denied the effective assistance of trial and appellate counsel.  The Court finds that the petitioner's claims lack merit and do not warrant habeas relief.  The Court therefore will deny the petition.

I.

The petitioner robbed a convenience store and its customers in Berkley, Michigan on September 14, 2004.  He entered a guilty plea with a plea agreement, but the deal came undone when the trial judge found that the petitioner had not fulfilled his cooperation agreement and the sentence would exceed the agreement's limits.  The petitioner's ineffective assistance of counsel arguments are based in part on those pretrial proceedings.

The guilty plea was entered on January 4, 2005.  The plea agreement provided that in exchange for the petitioner's guilty plea, the petitioner's minimum sentence on the three armed robbery convictions would not exceed fourteen years, plus the two-year consecutive sentence for the felony firearm charges.  The agreement was made under *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), which allows the trial judge to participate in plea negotiations.  The prosecutor promised not to oppose the agreement if the petitioner agreed to provide full disclosure to the Wayne County prosecutor's office and other police departments concerning other crimes of which the petitioner was aware, including any crimes involving his codefendant, Damien Lamont Dorris.  The court advised the petitioner of his rights and then accepted the petitioner's guilty plea.

At the sentencing hearing on September 15, 2005, the probation department recommended a sentence that would have been an upward departure from the sentencing guidelines.  The judge had indicated that he wished to take testimony concerning the petitioner's cooperation with the Wayne County, Michigan prosecutor's office.  Wayne County assistant prosecutor Robert Stevens testified at the hearing that the petitioner had been a codefendant with Damien Dorris in a case in which Dorris had been convicted of first-degree murder.  Dorris had also pleaded guilty to second-degree murder in another case.  Stevens stated that the petitioner did not testify against Dorris or any other person on behalf of the State.  Stevens confirmed that the petitioner did make a statement to

-2-

the police concerning Dorris, but that was before the petitioner entered into any agreement to cooperate with the Wayne County prosecutor's office. Stevens reviewed a statement from April 18, 2004 in which the petitioner spoke with a detective from the homicide division. Stevens also reviewed a second statement made by the petitioner to another officer on February 15, 2005 when the petitioner was charged with assault with intent to commit murder in a separate case. Stevens testified that neither of the petitioner's statements provided any assistance to the Wayne County prosecutor's office concerning the arrest and conviction of Dorris. Stevens noted that in his February 15, 2005 statement to the police, the petitioner implicated himself as being involved in the homicide. In response to a question from the judge, Stevens stated that he was not aware of any information concerning Oakland County's deal with the petitioner for the Berkley armed robbery, but Stevens did acknowledge that he sought some form of cooperation from the petitioner in the Wayne County cases. Stevens testified that the only cooperation that he received from the petitioner was the one statement, in which he implicated himself as a codefendant. Stevens also noted that because the petitioner was arraigned on the assault with intent to murder charge, the petitioner would be virtually useless as any type of witness.

The petitioner's defense attorney cross-examined Stevens extensively, challenging his statement that the petitioner had not cooperated with the Wayne County prosecutor's office. Stevens acknowledged that the petitioner in fact had provided him with information, but Stevens simply found the information to be useless.

The Oakland County prosecutor pointed out that the probation department's recommendation exceeded the plea agreement and the sentencing guidelines. And he argued that the trial judge

should not follow the plea agreement because the petitioner never provided truthful testimony against Dorris in the murder cases in Wayne County.

In response, defense counsel argued that Stevens's testimony actually established that the petitioner had cooperated, which was all that was required of him to fulfill his obligations under the plea agreement. Defense counsel emphasized that the petitioner not only implicated himself in one of the murder cases, but also put himself in great danger by cooperating with the police.

The court held that the plea agreement required the petitioner to do more than merely cooperate with the prosecutor's office. The judge referenced Stevens's testimony that his office did not need the petitioner, whose value as a witness had diminished. The information the petitioner gave the Wayne County prosecutor did not implicate any other person or uncover any probative evidence, and did not lead to the discovery of the weapons used in any crime. The judge further observed that although he was not inclined to follow the probation department's forty-to-sixty-year sentencing recommendation, he also believed that the agreed fourteen-year term was too lenient. The judge concluded that the plea agreement could not stand. The petitioner's guilty plea therefore was withdrawn and the case proceeded to trial.

On the first day of trial, defense counsel discussed with the court the September 15, 2005 hearing and expressed confusion over the reason the court did not follow the plea agreement. He asked if the reason was the petitioner's failure to cooperate, or if instead it was information that came to light through the presentence report and the facts the court learned at the codefendant's trial. The court provided the following explanation:

> I think there are several reasons [why the plea agreement was not followed]. One is certainly the opportunity to view the video [of the robbery]. At the time of the commission of the crime I recognized the fact that the way the people were being treated in that video was demonstrating not a respectful treatment to those who were

-4-

in your presence.  And especially the children.  Then observing the defendants
through their highway chase through the streets of Berkley and then on to 96–696.
Excuse me.

Intersecting at the Woodward/Ten Mile exit, demonstrating to me an appalling lack
of discretion and lack of sense of responsibility in watching out for our fellow
persons.  And, therefore, based on those reasons, the presentence report, hearing of
the testimony of the Court [sic] and officers in charge, I'm satisfied that the Court
would've gone beyond the guidelines in sentencing your client and, therefore, that's
the rationale.

Tr. Oct. 3, 2005 at 5-6.

When the testimony began, Beverly Drain testified that she and her six-year-old daughter

were at a Seven-Eleven convenience store in Berkley, Michigan on the afternoon of September 14,

2004.  They were standing at the Slurpee machine when Drain turned around and noticed an

employee next to her.  Drain testified that the petitioner was also standing next to her with a

handgun pointed at her stomach.  The petitioner ordered Drain to "be quiet" and stated "this is an

armed robbery, go sit down."  Tr. Oct. 4, 2005 at 20.  The petitioner directed Drain, her daughter,

and the store employee to the back of the store near a storage room and made them sit on the floor.

The petitioner demanded money from another customer before returning to Drain, her daughter, and

the employee.  The petitioner testified that there was another man assisting the petitioner robbing

the Seven-Eleven.  While the second man involved in the robbery demanded money from the store's

clerk, the petitioner demanded money from Drain, who gave him ten dollars.  Drain also heard one

of the men ask another customer for money and become angry when the customer said that he did

not have any.  Drain testified that after the two men left, the police were called and the store's doors

were locked.  Drain also testified that the petitioner, who had initially pointed the gun at her

stomach, was wearing a hat, dark clothing, and had dark skin.

-5-

The two Seven-Eleven employees also testified.  George Blackmore identified the petitioner as the assailant who entered the store with a pistol in his hand.  Blackmore noticed a discoloration of pigmentation on the petitioner's hand, and observed the petitioner wearing a dark hat with nothing covering the petitioner's face.  Shawna Daech testified that she was working as a cashier at the Berkley Seven-Eleven when the petitioner came behind the counter and pointed a handgun at her.  She was forced to turn over the money in the cash register.  The petitioner ordered the employees to the floor with Drain and her daughter.

Norbert Fillip testified that he was at the Seven-Eleven and the two gunmen robbed him of $2,500 to $3,000.  He identified the petitioner as one of them.  Fillip also noticed that the petitioner had a discoloration on his hand.

After the robbers left the store, Blackmore locked the doors and Daech called the police.  Daech gave the store video surveillance tape to a police officer.

Detective Sergeant Raymond Anger testified that he was assigned to investigate the Seven-Eleven robbery.  Anger stated that two people, one of whom was the petitioner, were arrested for the robbery.  Two handguns were recovered.   Anger testified that one of the recovered handguns was registered in the name of the petitioner's mother.  Anger also testified that he noticed the discoloration on the petitioner's hand, which he photographed.

Berkley Police Officer Jeffrey Onesko testified that he was on duty on September 14, 2004 with his partner, Officer Robert Beatty, when he noticed a bluish-green Dodge Intrepid at a stop sign at Bacon and Catalpa Streets.  The vehicle was stopped farther from the sign than what Onesko considered usual.  When Officer Onesko and his partner passed the vehicle, Onesko saw that the car was occupied by two black males who, in Onesko's opinion, were trying to avoid eye contact with

-6-

the officers.  Officer Onesko then received information via radio dispatch that an armed robbery had just occurred at the Seven-Eleven at Oakshire and Twelve Mile Road, which was within one mile of the Bacon and Catalpa intersection.  The radio report described the robbers as two black males.  Officer Onesko and his partner turned around to further investigate the Intrepid.  As the officers headed back down Bacon Street, the Intrepid sped away.  The officers gave chase.  A man on the street directed the officers to turn southbound on Elwood.  The officers pursued the Intrepid onto eastbound I-696.  The Intrepid was traveling very fast along the expressway's shoulder.  The Intrepid ultimately stopped near I-696 and Woodward when it collided with another vehicle and hit the retaining wall on the expressway.  The driver of the Intrepid, Damien Dorris, fled southbound on Woodward, where he was apprehended by Officer Onesko.  Dorris was carrying a forty-caliber handgun in the waistband of his pants.

Pleasant Ridge Police Officer Robert Reid testified that turned over to Onesko a nine-millimeter handgun that had been recovered about one-tenth of a mile from where the Intrepid had crashed.  Reid had taken into custody the petitioner, who was the passenger in the car.  Reid recovered $20, a knife, and some ammunition from the petitioner's pocket.  Officer Michael Crum searched the Intrepid after the petitioner was arrested.  Officer Crum discovered several items of clothing, including items that matched the armed robbers' reported attire.  Officers also recovered cash in the amount of $1,512 from the Intrepid's passenger-side floorboard.  Dorris was carrying $1,102.  While the petitioner was being booked, officers discovered $212 in his right shoe and one nine-millimeter round in his pants pocket.

The jury found the petitioner guilty of three counts of armed robbery, one count of felon in possession of a firearm, one count of felonious assault, and five counts of felony firearm.

The petitioner's convictions and sentences were affirmed on appeal. *People v. Stallworth,* No. 266833 (Mich. Ct. App. February 8, 2007); *lv. den.* 479 Mich. 852, 734 N.W.2d 209 (2007); *reconsideration den.* 480 Mich. 894, 738 N.W.2d 748 (2007). The petitioner then filed a post-conviction motion for relief from judgment in the trial court, which was denied. *People v. Stallworth,* No. 2004-198499-FC (Oakland Cnty. Cir. Ct. July 7, 2008). The Michigan appellate courts denied the petitioner leave to appeal his post-conviction motion denial. *People v. Stallworth,* No. 287124 (Mich. Ct. App. February 18, 2009); *lv. den.* 485 Mich. 863, 771 N.W.2d 774 (2009).

The petitioner seeks a writ of habeas corpus on the following grounds:

I.    The petitioner was denied the effective assistance of counsel where trial counsel came to court on the first day of trial and asked the trial judge why the petitioner's Cobb's agreement was not accepted.

II.   Defense trial counsel was constitutionally ineffective at sentencing in failing to object to the trial court scoring offense variables and thereby increasing the sentencing guidelines range based on disputed facts that the prosecutor did not charge and prove beyond a reasonable doubt to a jury.

The petitioner did not raise his ineffective counsel claims on direct appeal, which is the customary practice in Michigan courts. Instead, he raised the claims in his post-conviction motion. The state appellate courts denied relief because of that breach of procedure and the petitioner's failure to show cause for not following the rules and prejudice. The respondent has alleged that consideration of the petitioner's arguments is barred in this court by the procedural default rule. However, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The cause and prejudice inquiry for the procedural default merges with an analysis of the merits of many of the petitioner's remaining claims; therefore, the Court will proceed to the merits.

-8-

II.

The provisions of the Anti Terrorism Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ. The state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases . . . .

A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

-10-

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, ---, 130 S. Ct. 1855, 1862 (2010); *see id*. at 1865 (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached"); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489-90 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (*en banc*).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 1398 (2011).

## A.

The petitioner argues that he was deprived of the effective assistance of trial counsel because his lawyer (1) failed to ask the trial judge at the aborted sentence hearing why the plea agreement was not accepted, and (2) did not object to the trial court's scoring of offense variables and its decision to increase the sentencing guideline range.  The petitioner supports his argument by stating that counsel's question to the court on trial day established that counsel was not prepared for trial,

-11-

and that counsel failed to investigate any substantive defense.  The petitioner also argues that counsel failed to subject the prosecutor's case to meaningful testing.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  Counsel's performance is deficient if the attorney's representation "fell below an objective standard of reasonableness." *Id.* at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  However, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.  The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Wiggins v. Smith* 539 U.S. 510, 521 (quoting *Strickland*, 466 U.S. at 689 (internal quotes omitted)).  Counsel's conduct is entitled to the strong presumption that it falls within the wide range of reasonable professional assistance, and the petitioner must overcome the presumption that the conduct "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Higgins v. Renico*, 470 F.3d 624, 632 (6th Cir. 2006) (observing that "[s]uch [strategic] choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference").

-12-

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  A court making this determination must consider the totality of the evidence before the factfinder.  *Id.* at 695.  "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*,  --- U.S. at ---, 131 S. Ct. at 785.  Indeed,  "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664 (2004)).  Under the AEDPA standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner.  *Ibid.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case

-13-

involves review under the *Strickland* standard itself." *Harrington*, --- U.S. at ---, 131 S. Ct. at 785.

"Surmounting *Strickland*'s high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*,

559 U.S. 356, ---, 130 S. Ct. 1473, 1485 (2010)).  Because of this doubly deferential standard, the

Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, --- U.S. at ---, 131 S. Ct. at 788.  "[R]eliance on 'the harsh light of hindsight' to cast

doubt on a trial" and direct appeal that concluded more than five years ago "is precisely what

*Strickland* and AEDPA seek to prevent." *Harrington*, --- U.S. at --- 131 S. Ct. at 789.

The petitioner apparently claims that trial counsel was ineffective by failing to move for

specific performance of the plea agreement.  But the agreement was never accepted by the trial

judge.  Under Michigan law, a judge may suggest the sentence he or she would impose if a

defendant were to plead guilty. *People v. Cobbs* , 443 Mich. 276, 283, 505 N.W.2d 208 (1993).

However, that suggestion is considered to be a "preliminary evaluation," which does not bind the

judge until a plea agreement is accepted. *Ibid.*  If the judge does not follow through with the

suggested sentence, the petitioner's remedy under the circumstances is to withdraw his guilty plea

and proceed to trial. *See Santobello v. New York*, 404 U.S. 257, 263 (1971).  That is exactly what

happened.

It is quite clear that defense counsel did his level best to convince the trial judge that the

petitioner fulfilled his part of the bargain and should receive it benefits.  At the aborted sentencing

hearing, trial counsel questioned the assistant Wayne County prosecutor at great length about the

-14-

petitioner's attempts to cooperate with the prosecutions against codefendant Dorris in Wayne County.  Defense counsel then argued extensively that the petitioner had cooperated with the authorities in Wayne County as required by the plea agreement, at one point stating to the judge: "I don't know how much more he could have cooperated." Tr. Sep. 15, 2005 at 22.  The record leaves little doubt about the quality of defense counsel's advocacy.  The trial judge simply had a different view of the merits.

The trial judge disagreed with defense counsel and ruled that the petitioner's level of cooperation did not rise to the level anticipated by the plea agreement.  Because the judge rejected the agreement even after hearing the arguments of defense counsel, the petitioner is unable to show that trial counsel would have been successful in moving for specific performance of the agreement, such as it was.  Because the judge's *Cobbs* evaluation was not a binding agreement, counsel would have had no basis for seeking specific performance of the agreement.  *See e.g. United States v. Livingston,* 941 F. 2d 431, 436-37 (6th Cir. 1991) (defendant could not enforce original plea agreement which district court had deferred accepting or rejecting pending the preparation and consideration of presentence report).

The petitioner also argues that trial counsel failed to subject his case to meaningful adversarial testing, which would amount to constructive denial of counsel and require the automatic reversal of his conviction.  If that were true, the petitioner would not need to show prejudice to establish ineffective assistance of counsel.  *Moss v. Hofbauer*, 286 F. 3d 851, 860 (6th Cir. 2002) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)).  However, in order for such a presumption of prejudice to arise, the attorney's failure to test the prosecutor's case "must be complete."  *Bell v. Cone*, 535 U.S. 685, 697 (2002).

-15-

In this case, the alleged errors of counsel the petitioner cites did not amount to a constructive denial of counsel because defense counsel actively represented the petitioner at his trial. *Moss,* 286 F.3d at 860-62. As the trial court indicated in rejecting the petitioner's claim on post-conviction review, counsel conducted the voir dire questioning of the jurors and exercised peremptory challenges, cross-examined several witnesses, and in closing argument reminded the jurors that the prosecution was required to prove the elements of each charge beyond a reasonable doubt. *People v. Stallworth*, No. 2004-198499-FC, at *6-7. The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F. 3d 236, 247 (6th Cir. 2007) (citing *Bell*, 535 U.S. at 697). In this case, counsel's alleged failures do not amount to a complete failure to provide a defense. The presumption of prejudice does not apply, and the petitioner cannot show that he was actually prejudiced by counsel's alleged omissions. He therefore is not entitled to habeas relief on this claim.

The petitioner further contends that trial counsel came to trial unprepared and failed to investigate a substantial defense for the petitioner's trial. The petitioner, however, does not suggest what defense trial counsel should have raised, or what witnesses could have been called on his behalf. And the record itself does not suggest any. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been helpful to his defense. *Hutchison v. Bell*, 303 F. 3d 720, 748 (6th Cir. 2002). The petitioner has made no such showing here. Habeas relief therefore is not warranted on this claim.

-16-

The petitioner also argues that appellate counsel was ineffective by failing to raise the ineffective assistance of trial counsel claim on direct appeal. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because the petitioner's ineffective assistance of trial counsel claims are without merit, appellate counsel was not ineffective by failing to raise those claims on direct appeal.

On the other hand, the Court must conclude that appellate counsel's performance was deficient when he neglected to obtain and review transcripts of the plea and the aborted sentence hearings. However, the petitioner's claim that trial counsel was ineffective at those proceedings cannot succeed. Therefore, appellate counsel's shortcomings did not cause the petitioner prejudice, and habeas relief cannot be predicated on that slip-up. *Bransford v. Brown*, 806 F.2d 83, 87 (6th Cir. 1986).

### B.

The petitioner also contends that trial counsel was ineffective at the ultimate sentencing hearing after trial. The petitioner argues that defense counsel should have objected to the scoring of Offense Variables 3, 4, 9, and 19 under the Michigan Sentencing Guidelines. However, the petitioner is unable to show that he was prejudiced by counsel's failure to object to the scoring of those offense variables because the petitioner has not established that his sentence would have been different had counsel objected to the scoring of the sentencing guidelines. On the petitioner's direct appeal, the Michigan Court of Appeals ruled that the four offense variables had been correctly scored under Michigan law, and trial counsel therefore was not ineffective by failing to raise objections to the sentencing guidelines. *People v. Stallworth*, No. 2004-198499-FC at *2-3. An

-17-

objection to the scoring of the sentencing guidelines would have been futile, and counsel therefore was not ineffective by failing to object.

The petitioner further contends that trial counsel was ineffective by failing to object to the trial court's use of information at sentencing that had not been determined by the jury verdict. The petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to score his sentencing guidelines that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by the petitioner. The petitioner believes that *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support his position. However, the argument that Michigan's sentencing-guideline system, wherein judge-found facts are used to establish the minimum end of an indeterminate sentence, violates the Sixth Amendment, has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). This Court is bound by that decision. Under Michigan law, armed robbery is punishable by imprisonment for any term of years to life. Mich. Comp. Laws § 750.529. The maximum penalty for being a felon in possession of a firearm and being a second-felony habitual offender is seven-and-one-half years. Mich. Comp. Laws §§ 750.224g; 769.10. Here, the petitioner's sentence fell within the statutorily-authorized maximum penalty, which was not enhanced by judicial fact-finding. There was no violation of the rule in *Blakely* or *Apprendi*, and therefore no basis for defense counsel to object.

-18-

III.

The state court decisions in this case were not contrary to federal law, an unreasonable

application of federal law, or an unreasonable determination of the facts.  The petitioner has not

established that he is presently in custody in violation of the Constitution or laws of the United

States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  April 8, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on April 8, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---